## ROLAND et al. v. EMPLOYERS' CASUALTY CO. (No. 11648.)*

(Court of Civil Appeals of Texas. Fort Worth. Nov. 27, 1926. Rehearing Denied Jan. 8, 1927.)

**1. Master and servant ⬅⇒398—Notice of injury within six months is sufficient, in case injured employee dies or becomes incapacitated (Vernon's Ann. Civ. St. 1925, art. 8307, § 4a).**

Under Vernon's Ann. Civ. St. 1925, art. 8307, § 4a, notice to insurer or the employer within six months is sufficient, in case injured employee dies or becomes physically or mentally incapacitated.

**2. Master and servant ⬅⇒398—Filing suit constitutes "notice" of injury to employee (Vernon's Ann. Civ. St. 1925, art. 8307, § 4a).**

Under Vernon's Ann. Civ. St. 1925, art. 8307, § 4a, where employee has died as result of injury or has been physically or mentally incapacitated, notice must be given or claim for compensation filed or suit begun within six months, and filing of suit constitutes notice.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Notice.]

**3. Master and servant ⬅⇒405(1)—Evidence held to show employer, insurer, and Industrial Accident Board were notified within six months after injury.**

In suit to set aside finding of the Industrial Accident Board, denying compensation, evidence held to show that employer, insurer, and Industrial Accident Board were notified within six months of claimed injury.

**4. Pleading ⬅⇒236(3)—Filing of trial amendment is discretionary with trial court.**

Filing of a trial amendment to a petition is within trial court's discretion.

**5. Pleading ⬅⇒245(3)—Refusal to permit trial amendment to petition, alleging plaintiff gave notice of injury and death of husband within six months, held error.**

In suit to have finding of the Industrial Accident Board in compensation case set aside, where evidence of notice within six months was admitted without objection, refusal to permit trial amendment to petition to show that notice was timely given held error.

**6. Master and servant ⬅⇒405(4)—Evidence held to support finding employee suffered perforation of appendix in course of employment and died from peritonitis following operation (Rev. St. 1925, art. 8309, § 1, subd. 5).**

Evidence, in view of Rev. St. 1925, art. 8309, § 1, subd. 5, held to sustain finding that employee suffered perforation of appendix or injury thereto while in course of employment, and that he died as direct result of peritonitis which ensued after operation.

### On Appellee's Motion for Rehearing.

**7. Evidence ⬅⇒14—It is common knowledge that one may have soreness in region of appendix, and yet live to ripe old age.**

It is a matter of common knowledge that one may have soreness or tenderness in region of his appendix, and yet live to a ripe old age.

**8. Master and servant ⬅⇒376(2)—Predisposition towards appendicitis held not to preclude recovery, if lifting in regular employment caused appendix to burst.**

That deceased employee had predisposition toward appendicitis held not to preclude recovery, if lifting of heavy objects in regular course of his employment caused appendix to burst.

Appeal from District Court, Montague County; Vincent Stine, Judge.

Action by Mrs. F. B. Roland and others against the Employers' Casualty Company. From a judgment for defendant, plaintiffs appeal. Reversed and rendered.

Donald & Donald, of Bowie, for appellants.

Lawther, Pope, Leachman & Lawther, of Dallas, for appellee.

BUCK, J. This is an appeal from a judgment of the district court of Montague county, denying a recovery sought by Mrs. F. B. Roland and her minor daughter against the Employers' Casualty Company. The plaintiffs sued for the death of B. C. Roland, the husband and father, respectively, of the plaintiffs, alleged to have occurred during the course of his employment with the Mascho Corporation, a private corporation engaged in drilling operations in Montague county. It was alleged that said Roland, while at work, on or about August 7, 1924, assisting the driller, as the evidence shows, sustained an injury while attempting to lift some object, shown to have been joints of pipe weighing about 450 pounds, and that from such strain caused a rupture of his appendix, and that by reason

---

⬅⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Writ of error granted March 2, 1927.

thereof complications arose, and an operation was found to be necessary and peritonitis set in, which caused the death of said B. C. Roland. It was alleged that said Roland was earning, at the time of his death, and his services were reasonably worth $10 a day, and he had been receiving such compensation for more than one year prior to his death; that the plaintiffs had submitted their claim to the Industrial Accident Board at Austin, Tex., which said board, on February 9, 1925, rendered its judgment refusing to allow said claim; that within 20 days after the rendition of the judgment plaintiffs served notice on the Industrial Accident Board, Mascho Corporation, and Employers' Casualty Company, by registered mail, to the effect that they were not willing and did not consent to abide by said ruling and decision of the Industrial Accident Board, and within 20 days from the service of said notice on said parties aforesaid, said plaintiffs filed this suit in the district court of Montague county to have said finding and decision of the Industrial Accident Board set aside and held for naught.

There was no allegation, in plaintiffs' petition filed March 10, 1925, that the employer, the Mascho Corporation, or its president, James A. Mascho, or the Industrial Accident Board, or the Employers' Casualty Company, the insurer, had been given notice of the injury to said B. C. Roland. Nor was there any allegation that notice had been given to either of them within six months after the time of the accident. The only allegation in their original petition that might possibly be claimed as an allegation of notice is that the plaintiffs had submitted their claim to the Industrial Accident Board, and that said board had rendered a judgment refusing to allow said claim. Then follows the allegations that notice was served on these several parties that the plaintiffs were dissatisfied with the judgment and decision of the Industrial Accident Board and did not consent to abide thereby.

Plaintiffs further alleged in their original petition that they incurred $230 hospital fees, surgeons' fees, etc., and prayed further for the recovery of $20 per week for a period of 410 weeks. On October 20, 1925, plaintiffs filed a trial amendment, in which they alleged that, pursuant to the injury sustained by B. C. Roland, it was necessary that medical attention be afforded to him, and with full knowledge thereof to the president of the Mascho Corporation, J. A. Mascho, he was treated by Dr. F. M. Patton and Dr. J. D. Wilson, of Bowie, Tex., and thereafter at the Wright Sanitarium, Bowie, Tex., and that an operation was performed with full knowledge unto the said employer; that pursuant to such operation his death resulted thereafter; that it was impossible to communicate with said Employers' Casualty Company because, at that time, the identity of the insurance company was not known to plaintiffs.

The cause was submitted to a jury upon special issues, to wit:

"(1) Did B. C. Roland receive an injury while in the course of his employment at the well, on or about the 7th day of August, 1924? A. Yes.

"(2) If you have answered the foregoing issue 'No,' then you need not answer this, but if you have answered the same 'Yes,' then was said injury the direct and proximate cause of the death of the said B. C. Roland? A. Yes.

"(3) If you have answered either of the foregoing issues 'No,' then you need not answer this, but if you have answered both of the foregoing issues 'Yes,' then would a failure of the defendant, Employers' Casualty Company, to make a lump sum settlement with the plaintiff of the compensation due them, if any is due them, on account of said injury, if any, work manifest hardship and injustice to the plaintiffs? A. Yes.

"No. A. Did the Employers' Casualty Company have a policy of insurance in force during the month of August, 1924, covering injuries to employees of the Mascho Corporation under the Texas Workmen's Compensation Act? A. Yes.

"No. B. Did the Employers' Casualty Company or the Mascho Corporation receive or have notice of such injury, if any, within 30 days after the 7th day of August, 1924? A. Yes."

On August 22, 1925, the plaintiffs tendered a pleading styled, "Plaintiffs' Trial Amendment," in which they alleged as follows:

"Plaintiffs would further allege that James A. Mascho, president of the Mascho Corporation, knew that B. C. Roland was in the condition suffering from peritonitis resulting from a ruptured or perforated appendix, from which condition he died, on August 13, 1924, and that she, as his wife, relied upon such fact that he knew of such condition and depended upon his giving any due notice necessary to the Employers' Casualty Company, and that subsequent thereto, when she first learned of her rights in the premises, gave the notice unto the Employers' Casualty Company and the Industrial Accident Board, Austin, Tex., concerning the injury and death of the said B. C. Roland, deceased, and that such notice was given at a time when she first knew of her rights in the premises, all of which was done within six months from the date of death of said B. C. Roland, which occurred on August 13, 1924.

"Wherefore plaintiffs pray that such trial amendment be in all things considered, and that she have judgment, as in her original petition prayed for herein, for all of which she respectfully prays."

The trial court refused permission to file this pleading and gave the following reasons:

"This motion to file this trial amendment was made just before the conclusion of all the evidence. There was nothing in the evidence apparent to the court which might have operated as a surprise to plaintiffs as to the matters this relates to. The said James A. Mascho testified two days before this, and, being a nonresident of the county, was excused by mutual agreement of counsel on the understanding that neither party should offer testimony as to statements to or by the said Mascho that might make it necessary for the other party to need said Mascho as a witness to rebut same."

Plaintiffs and defendant each filed a motion for judgment, and the trial court entered a judgment for defendant. The plaintiffs have appealed.

This judgment contains the following recitation:

"And the court having considered said verdict, is of the opinion, and so finds it to be a fact that special issue No. B should not have been submitted to the jury, because there is no pleading or evidence in the record to sustain the submission of such an issue to the jury or the answer of the jury to such issue, and that the same therefore should be and is treated as a nullity."

It is evident that the trial court thought that the failure of plaintiffs to allege that the Employers' Casualty Company or the Mascho Corporation had notice of the injury to B. C. Roland within 30 days after the alleged accident or injury made the pleadings insufficient as against a general demurrer.

Article 8307, § 4a, Vernon's Ann. Tex. Statutes 1925, provides:

"Unless the association or subscriber have notice of the injury, no proceeding for compensation for injury under this law shall be maintained unless a notice of the injury shall have been given to the association or subscriber within thirty days after the happening thereof, and unless a claim for compensation with respect to such injury shall have been made within six months after the occurrence of same; or, in case of death of the employé or in the event of his physical or mental incapacity, within six months after death or the removal of such physical or mental incapacity. For good cause the board may, in meritorious cases, waive the strict compliance with the foregoing limitations as to notice, and the filing the claim before the board."

[1] It is the contention of appellants that the part of the statute quoted, to wit, no recovery is allowable unless the association or subscriber have notice of the injury within 30 days after such injury, and unless a claim for compensation with respect to such injury shall have been made within six months after the occurrence of the same, evidently refers to and is limited to an injury not resulting in death. That the part of section 4a which reads "or, in case of death of the employé or in the event of his physical or mental incapacity, within six months after death or the removal of such physical or mental incapacity," means that, where death ensues or the person becomes physically or mentally incapacitated, if notice is given within six months, it is sufficient. We believe this construction of the statute is correct, and that the evident intention of the Legislature was to allow six months for notice of the injury in case the injured person dies, or becomes physically or mentally incapacitated.

The Workmen's Compensation Acts, as a rule, require notice of the fact of the injury to be given to the employer and to the state board having power to determine questions under this law, or to the insurance company, and most of those we have examined make a difference in the time within which notice must be given, in order to recover, between nonfatal injuries and injuries resulting in death, or in mental or physical incapacity. For instance, the Massachusetts act, after which our act is said to have been modeled, provides (G. L. Mass. c. 152, § 41, as quoted in Boyd's Workmen's Compensation [1912] p. 753, § 15):

"No proceedings for compensation for an injury under this act shall be maintained unless a notice of the injury shall have been given to the association or subscriber as soon as practicable after the happening thereof, and unless the claim for compensation with respect to such injury shall have been made within six months after the occurrence of the same; or, in case of the death of the employé or in the event of his physical or mental incapacity, within six months after death or the removal of such physical or mental incapacity."

[2] Evidently the provision as to notice of the injury to the employé, made in his behalf, where the employé has died as a result of the injury, or has been physically or mentally incapacitated, means that either notice in such cases must be given within six months or that claim for compensation must be filed within six months, or suit must be filed within said time; and that in the latter case the filing of suit constitutes notice. See Cooke v. Holland Furnace Co., 200 Mich. 192, 166 N. W. 1013, L. R. A. 1918E, 552; Linnane v. Ætna Brewing Co., 9 Conn. 158, 99 A. 507, L. R. A. 1917D, 77, with annotations.

[3] That James A. Mascho, the president and general manager of the Mascho Corporation, the employer of Roland, knew, on the day of the claimed injury, that Roland was suffering is not questioned. He so testified. But he says that he did not know that Roland had suffered an injury while in the course of his employment. That he thought he was suffering from colic, or from appendicitis, or from indigestion, or from some stomach trouble. That the first he knew that the widow was claiming compensation was when she told him she thought she was entitled thereto. That he wrote to the "company," evidently meaning the insurance company, to that effect, on December 5, 1924, which would have been within six months after the claimed injury. It is not shown definitely when the Industrial Accident Board was notified of the injury, but it was evidently some time before the 9th day of February, 1925, for, on that date, after the hearing, the board denied the application for compensation. Therefore the evidence shows that the employer, the insurance company, and the Industrial Accident Board were all notified within six months of the claimed injury, and that compensation was sought.

[4] The filing of a trial amendment is largely within the trial court's discretion, but the court's refusal to file a trial amendment and withdraw an announcement of ready for trial was held to be error, where no injury could have resulted to defendant therefrom, in Ford v. Liner, 24 Tex. Civ. App. 353, 59 S. W. 943. In Caswell v. McCall & Sons, 163 S. W. 1001, the Court of Civil Appeals for the Austin district, in an opinion by Justice Rice, held that the trial court abused its discretion in not permitting defendant to amend his petition during trial to allege the facts constituting damages so as to render admissible evidence of damages, where the court had sustained the petition on demurrer. It has been held that a refusal of a trial court to permit a trial amendment to correct a clerical error in the petition as to the location of property, for the sale of which commissions were claimed, was error, especially where it appeared that the findings for plaintiff would otherwise have been authorized. Hall v. Bowles, 272 S. W. 638, opinion by Chief Justice Conner, of this court.

[5] The evidence of notice within six months was shown in the testimony, and no objection was made to its introduction, apparently, and we think that the trial court erred in refusing to permit the trial amendment to be filed. We do not think that the reason given, that J. A. Mascho had been excused and that he was a nonresident of the county, authorized the court to refuse permission to file the trial amendment, inasmuch as Mascho had been a witness and had been questioned as to his having given notice to the insurance company, and as to his having received notice from the widow of her intention to claim compensation, and the defendant had full opportunity to cross-examine him on that question. As said by Justice Finley, of the Dallas Court of Civil Appeals, in Greeley-Burnham Grocery Co. v. Carter, 30 S. W. 487:

"It was within the discretion of the trial court to grant the request of the plaintiff to withdraw its announcement and amend its pleadings. This discretion should be used to attain the ends of justice, and is not arbitrary and absolute. Texas & N. O. R. Co. v. Goldberg, 68 Tex. 685, 5 S. W. 824; Whitehead v. Foley, 28 Tex. 1; Obert v. Landa, 59 Tex. 475. We think the action of the court below was arbitrary and an erroneous exercise of its discretion, for which the judgment should be reversed."

In this case, we think that the trial court erred in refusing to permit the filing of the trial amendment.

[6] But the appellee claims and asserts in one of its cross-assignments that in no event could a recovery for plaintiff be sustained, in that there is no evidence showing that Roland received an "industrial injury" during the course of his employment, from which he died. Our statute (title 130, art. 8309, subd. 5), under section 1, Rev. Statutes, defines the term "injury" as follows:

"The terms 'injury' or 'personal injury' shall be construed to mean damage or harm to the physical structure of the body and such diseases or infection as naturally result therefrom."

In Babich v. Oliver Iron Mining Co., 157 Minn. 122, 195 N. W. 784, 202 N. W. 704, it is said:

"A sudden and violent rupture or break in the physical structure of the body of an employee, caused by some strain or exertion * * * is an accidental injury within the meaning of the Workmen's Compensation Act, even though no external unforeseen event such as slipping, falling, or being struck contributes thereto."

In Southwestern Surety Ins. Co. v. Owens, 198 S. W. 662, by the Galveston Court of Civil Appeals, writ of error denied, it is said:

"Where lifting of a can of paint caused a blood vessel in a servant's lungs to burst, there was an 'accidental injury' within the meaning of the Workmen's Compensation Act, and it is immaterial that it had burst before, but had healed over, and might burst again."

Statement of deceased that he had bursted something lifting that can of paint was admissible as part of the res gestæ.

In Fort Worth Mut. Benev. Ass'n v. Miller, 280 S. W. 338, by this court, opinion by Chief Justice Conner, writ of error dismissed by the Supreme Court, it was held that the bursting of a blood vessel, while the insured was trying to push a car which had stalled in the sand, was an accident and that the beneficiary of the accident policy was entitled to recovery.

In General Accident Board v. Evans, 201 S. W. 705, in an opinion by the late lamented Justice Talbot, of the Dallas Court of Appeals, the court, quoting from the opinion of City of Milwaukee v. Miller, 154 Wis. 652, 144 N. W. 188, L. R. A. 1916A, 1, Ann. Cas. 1915B, 847, said:

"A proper administration of the Workmen's Compensation Act requires appreciation of the manifest legislative purpose to abolish the common-law system regarding injuries to employees as unsuitable to modern conditions and conceptions of moral obligations, and to erect in place thereof one recognizing every personal loss to an employee, not self-inflicted, as necessarily entering into the cost of production, and required to be liquidated in the steps ending with compensation. * * * The foregoing views aptly express, we think, those things that should serve as a guide in the interpretation of a statute like the one to which they relate."

See Fritz v. Rudy Furnace Co., 218 Mich. 324, 188 N. W. 528; Robbins v. Original Gas Engine Co., 191 Mich. 122, 157 N. W. 437; Clark v. Lehigh Valley Coal Co., 264 Pa. 529, 107 A. 858; Mailman, Case of, 118 Me. 172, 106 A. 606; Voorhees v. Smith Schoonmaker Co., 86 N. J. Law, 500, 92 A. 280. Most of

these cases cited hold that injuries received internally but from some external force, or as the result of muscular contraction due to strain, constitute industrial injuries.

We think the evidence was sufficient to support the findings of the jury that Roland suffered a perforation of his appendix, or, at least, some injury thereto, while in the course of his employment, and that as a result of such injury an operation was found to be necessary, and that he died as a direct result of peritonitis, which ensued. The evidence shows that Roland did most of the work around the well, especially in the absence of the driller, and that part of his duties was the lifting of heavy joints of pipe, some of which weighed 450 pounds; that, at the time of the claimed injury, he was doing this kind of work. Mr. D. C. Grove, the driller testified that he came on duty on that well the morning that Roland received his claimed injury, and that there was heavy lifting to be done; that he saw Roland lift a pipe at that time weighing about 450 pounds; that after this lifting he saw Roland sitting down; this was an unusual thing for Roland to do; he gave evident signs of being in distress or pain; he did not look like a man who was fit to work; he looked like a man in pain, and certainly not in his ordinary health.

Other testimony of this character is in the record. Dr. E. W. Wright testified that he treated Roland during his last illness, and that he found that he was suffering from a ruptured appendix; that, in his opinion, a diseased appendix is more likely to rupture during exertion than while a person is lying still; that before the appendix ruptures or perforates it first fills with fluid or pus as a result of infection, and when it perforates, it breaks open and liberates this pus into the abdominal cavity, and the reason he thought the appendix would rupture more quickly with a man exerting himself than while lying still is because any movement of his body that would cause his muscles to contract would increase the pressure on it, and it would be a great deal more likely to pop open than if lying still in a relaxed condition. He further testified that, in his opinion, the perforation or rupture of the appendix occurred at a time agreeing with the time when Roland was doing this lifting, after which he sat down, evidently in pain.

From what we have said, we think that the judgment of the trial court for the defendant below is error, and that judgment should have been entered for the plaintiff, on the answers of the jury to the special issues submitted. Therefore the judgment of the trial court is reversed and judgment here rendered that appellants each recover $3,091.25, with interest at 6 per cent. from the date of the judgment of appellee.

Appellee has reserved several cross-assignments of error, which we have carefully considered. We do not believe that any of them present error, in view of the facts and circumstances of this case. Therefore they are overruled.

Judgment reversed and rendered.

### On Appellee's Motion for Rehearing.

We believe we correctly disposed of the questions involved in this appeal on original hearing.

[7] Appellee has asked us to find certain additional facts. We do find that the evidence sustains the conclusion that the deceased, prior to the alleged injury which preceded his death, had been suffering from some pain in his appendicital region. But we do not find that he had a developed case of appendicitis. It is a matter of common knowledge that one may have soreness or tenderness in this part of his anatomy, and yet live to a ripe old age. Perhaps one so afflicted should exercise care and caution to avoid strains and causes of constipation. A strain may cause the appendix to become swollen and to burst. One may be liable for the death of another suffering from a disease, and even an incurable disease. In 8 Ruling Case Law, § 11, p. 437, it is said:

"Where a personal injury aggravates an existing ailment or disease, or develops a latent one, the person whose negligence caused the injury is liable to respond in damages for the results of the disease as well as of the original injury. In such case the injury is the prime cause which opens the way to and sets in motion the other cause, and the latter cannot be regarded as an independent cause of injury or damage, nor can the wrongdoer be allowed to apportion the measure of responsibility to the initial cause. It has been held that the mere fact that the injured person has an organic tendency to disease, which is developed by the injury, does not necessarily show that the diseased condition is not a direct damage naturally flowing from the injury. The defendant must respond in damages for such part of the diseased condition as his negligence has caused, and if there can be no apportionment, or if it cannot be said that the disease would have existed apart from the injury, then he is responsible for the diseased condition. Thus the defendant is responsible for a cancer where the injury received by his negligence superinduced and contributed to its production or development, or for death resulting from a disease, where the injury rendered the system of the injured party susceptible to such disease and liable to be attacked thereby as a natural consequence."

[8] Undoubtedly the same rule as enunciated in the foregoing quotation, as applied to injuries arising by reason of negligence of defendant, would hold in cases like the one under consideration. We do not think the fact, if it be a fact, that the deceased had a predisposition towards appendicitis, and that the lifting of heavy objects in the regular course of his employment caused the swollen

or enlarged or tender appendix to burst, would preclude recovery by the plaintiffs in this case.

Appellee urges that we erred in holding that section 4a, art. 8307, Vernon's Ann. Tex. Statutes of 1925, provides that in case of death of an employee, or in the event of his physical or mental incapacity, notice may be given at any time, within six months after the death or the removal of such mental or physical incapacity.

In Georgia Casualty Co. v. Little (Tex. Civ. App.) 281 S. W. 1092, Manuel Brown died in Navarro county, as the result of an alleged injury. At the time of his injury and death his wife resided in another county, probably Kaufman. After Brown's injury he was unconscious for some time and helpless to the time of his death. His wife did not know of his injury or his death until months afterwards. Nor did she know for whom he was working or where. She first learned of his death in December, and he died in August. The claim for compensation was filed with the Industrial Accident Board on February 8th. The board considered the claim and allowed damages. The insurance company filed suit in Navarro county to set aside the award of the Industrial Accident Board, and, in discussing the question of time of notice, the Austin Court of Civil Appeals held that the Industrial Accident Board was authorized to consider the application under amendment to article 5246—43, Vernon's Ann. Civ. St. Supp. 1918 (Act March 28, 1917, c. 103, pt. 2, § 4a), which reads as follows:

"Provided that for good cause the board may, in meritorious cases, waive the strict compliance with the foregoing limitations as to notice, and the filing the claim before the board."

The court said:

"In view of these facts and circumstances, we are not prepared to disturb the holding of the board and of the trial court that good cause was shown for the delay of 17 days over the 6-month period allowed by law for filing such claims."

In another case which we have read, the beneficiary, the wife of the deceased, was living in a foreign country at the time of his accidental death. And the court properly, we think, in that case held that good cause was shown for the delay in filing the claim for compensation. But as before held in the original opinion, we think that the statute does not require notice to be given or the claim to be filed, in a case where the injured party dies or has suffered mental or physical incapacity, within 30 days, but does expressly provide that in such case the beneficiary has six months in which to comply with the law.

The motion for rehearing is overruled.